## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————
DEMOCRATIC NATIONAL COMMITTEE,   :
                                      :
        Plaintiff,                   :
                                        :
        v.                       :   Civil Action No. 06-0842 (JGP)
                                        :
UNITED STATES SECRET SERVICE,         :
                                        :
        Defendant.           :
—————————————————————:

CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON,               :
                                        :
        Plaintiff,                   :
                                        :
        v.                       :   Civil Action No. 06-0083 (JGP)
                                        :
U.S. DEPARTMENT OF HOMELAND     :
SECURITY,                            :
                                        :
        Defendant.           :
—————————————————————:

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
### CLAIM FOUR OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brought its

action in this consolidated case under the Freedom of Information Act ("FOIA"), 5 U.S.C §552,

as amended, and agency FOIA regulations, to challenge the failure of the United States Secret

Service ("Secret Service"), a component of the U.S. Department of Homeland Security ("DHS"),

to fulfill CREW's request for documents relating to any visits that specified individuals made to

the White House or the residence of the Vice President between January 1, 2001, and the

present, and DHS's failure to act on CREW's request for expedited treatment of its FOIA

request.

CREW also brought suit under the Federal Records Act ("FRA"), 44 U.S.C. §3301, and the Administrative Procedure Act ("APA"), 5 U.S.C. §706, to challenge the policy of the Secret Service to erase federal records,[1] including Worker and Visitor Entry System ("WAVES") records, from its computer system once it has transferred the information on those records to the White House. It is this aspect of CREW's complaint, Claim 4, that DHS has now moved to dismiss.

Adopting a scatter-gun approach, DHS raises a number of arguments – none of them legally sound – urging dismissal of CREW's FRA claim. At bottom, DHS's motion to dismiss boils down to two basic arguments: First, that the FRA does not contain a waiver of sovereign immunity sufficient to support the injunctive relief requested by CREW, and second, that CREW lacks standing because it has failed to demonstrate a continuing injury and imminent threat of future injury. As CREW demonstrates here, all necessary jurisdictional prerequisites have been met by CREW, and the Court possesses jurisdiction to entertain its FRA claim. Accordingly, DHS's motion to dismiss should be denied.

## I. Statement of Facts

On February 2, 2006, CREW sent a FOIA request to defendant seeking records relating to any visit that Jack Abramoff and several other individuals[2] made to the White House or the

---

[1]See Plaintiff's Second Amended Complaint, Claim Four, ¶¶44-48.

[2]The following individuals, in addition to Jack Abramoff, were listed: Michael Scanlon, Neil Volz, Tony Rudy, Shawn Vassell, Kevin Ring, Edwin Buckham, and Patrick Pizzella. Second Amended Complaint for Declaratory Judgment and Injunctive Relief, Exhibit A (record no. 15-2).

2

residence of the Vice President from January 1, 2001, to the present.  CREW also requested

expedition of its FOIA request pursuant to 5 U.S.C. §552(a)(6)(E)(i) and

DHS regulations, 6 C.F.R. §5.5(d).  Id.  As CREW explained in its request:

> There is a particular urgency in informing the public about whether
> the President, the Vice President, and/or their staff met with Jack
> Abramoff and the other individuals associated with Mr. Abramoff
> and to whom this FOIA request pertains.  There has been endless
> speculation in countless media reports about what relationship Mr.
> Abramoff and his associates had with the White House and,
> specifically, the President.  The public has a need to know whether
> and when meetings between them took place to evaluate the nature
> of this association and how it may have influenced the President
> and his staff in the exercise of this authority.

Id.  CREW also established that it satisfied the criteria for expedition, "as a non-profit

corporation engaged primarily in disseminating information it gathers from a variety of sources,

including the Freedom of Information Act."  Id.  As CREW explained, "CREW 'gathers

information of potential interest to a segment of the public, uses its editorial skills to turn the raw

material into a distinct work, and distributes that work to an audience.'"  Id.; American Civil

Liberties Union v. U.S. Department of Justice, 321 F.Supp.2d 24, 30 n.5.  CREW sought a

waiver of fees associated with processing its request.

The only written response by the agency to the request was a letter dated March 1, 2006,

in which the Secret Service acknowledged receipt of CREW's request with a letter from Kathy J.

Lyerly, noting that "[a] search for files responsive to your request is being conducted.."  Second

Amended Complaint for Declaratory Judgment and Injunctive Relief, Exhibit A, p. 8.

Subsequently, on July 7, 2006, the Secret Service forwarded to CREW records that the agency

had released on that date to Judicial Watch, along with a copy of a letter addressed to Judicial

Watch.  Id. At Exhibit C, p. 10-11.  These records were partially responsive to CREW's FOIA

3

request.

On May 16, 2006, the Secret Service filed a motion to dismiss for lack of subject matter jurisdiction in <u>Judicial Watch v. U.S. Secret Service</u>, (D.D.C. Civ. No. 06-310 (JGP)), another FOIA lawsuit challenging the failure of the Secret Service to produce records reflecting the entries and exits of lobbyist Jack Abramoff to and from the White House. As part of its motion, the Secret Service submitted the declaration of Kathy J. Lyerly, the Special Agent in Charge of the Liaison Division and the Freedom of Information and Privacy Acts Office for the Secret Service. <u>Id</u>. at Exhibit D, p. 23.

In her declaration, Ms. Lyerly attested to the "longstanding practice of the Secret Service to transfer WAVES records on CD-ROM to the White House every 30 to 60 days." Ms. Lyerly did not explain further what was meant by "longstanding practice"; however, Ms. Lyerly did state in her declaration that "once the Secret Service transferred the WAVES records, the Secret Service ensured that those records were erased from its computer system." <u>Id</u>. at p. 25.

According to Ms. Lyerly, beginning in October 2004, "at the request of the National Archives and Records Administration, the Secret Service began temporarily retaining its own copy of the WAVES records that it transferred to the White House. As such, the Secret Service has in its possession WAVES records dating back only to October 2004."

Based on Ms. Lyerly's declaration, the Secret Service argued in its motion that its failure to produce any WAVES records of Mr. Abramoff's White House visits prior to October 2004 "is not surprising because defendant does not possess WAVES records for the time period in which those visits took place." <u>Id</u>. at p.20. Stated simply, the Secret Service was asserting that it no longer possessed the WAVES records requested by Judicial Watch (and CREW) because the

Secret Service intentionally destroyed those records once they sent copies to the White House.

Ms. Lyerly's first declaration subsequently was "modified" and a new declaration of Ms. Lyerly was executed on July 7, 2006, and filed with the Court in the Judicial Watch case on the same day.  Case 1:06-cv-00310-JGP, Document 22-2.  In her most recent declaration, Ms. Lyerly notes that in conducting a recent search for documents responsive to a FOIA request, "a WAVES record was discovered on the hard drive of a Secret Service computer located in the Information Technology Section of the Secret Service's Presidential Protective Division (PPD).  Upon further examination, it appeared that certain WAVES data pre-dating October 2004 existed on the hard drive of that computer and the hard drive of a second computer in the same office." Id. at p. 3.

According to Ms. Lyerly as set forth in her modified declaration, the Secret Service assembled a team of Secret Service representatives to determine if WAVES data predating October 2004 was stored on computer files at the Secret Service.  Id.  Ms. Lyerly did not supervise or direct the efforts of the team of representatives; these representatives were under the direction of the Secret Service's Office of Inspection.  Id.  According to Ms. Lyerly, some pre-October 2004 WAVES data may exist.  Id. At p. 4-6.  She notes in her most recent declaration that "[t]he Inspection team has found that the WAVES records on the server, older than 60 days, are purged daily and overwritten on the server.  The Inspection team also found, however, that some WAVES data downloaded from the server to the two computers' hard drives remain on the hard drives." Id. at 6.

The Secret Service takes the position in this litigation that once a visitor's visit to the White House complex is complete, the WAVES and Access Control Records System ("ACR")

records are of no use to the Secret Service, and "the Secret Service has no continuing interest in preserving or retaining them." Id. at 7. The Secret Service is responsible for protecting the President of the United States; protection is its primary mission. 18 U.S.C. §3056.

## II. Procedural History

Following its February 2, 2006 FOIA request, CREW filed its complaint in this case on May 10, 2006, and its first amended complaint on May 23, 2006. On June 12, 2006, defendant filed its answer to the complaint as well as a motion to consolidate CREW's case with another FOIA case seeking some of the same documents that CREW seeks, Democratic National Committee v. United States Secret Service, No. 06-842. Over CREW's objection, the Court granted the motion and consolidated these cases on July 18, 2006.

CREW filed a second amended complaint on August 10, 2006, which asserts a claim under the Federal Records Act.[3] This claim, Claim Four, is the subject of defendant's instant motion to dismiss. By order entered on September 8, 2006, briefing on the motion to dismiss will be complete on September 25, 2006. Summary judgment motions are due on the FOIA claims in this consolidated case on September 21, 2006, and the entire matter, without a stay of any proceedings, has been referred to a magistrate for a settlement conference.

### ARGUMENT

I. The Court Has Jurisdiction To Entertain CREW's FRA Claim Challenging
   The Adequacy of The Secret Service's Record Keeping Guidelines.

The FRA actually is a collection of statutes that governs the creation, management, and disposal of federal records. See generally 44 U.S.C. §§2101 et seq., 2901 et seq., 3010 et seq.,

---

[3]Plaintiff in the consolidated case, Democratic National Committee, does not assert a claim under the FRA.

and 3301 <u>et seq.</u>  Among other things, the FRA ensures "[a]ccurate and complete documentation

of the policies and transactions of the Federal Government," as well as "judicious preservation

and disposal of records."  44 U.S.C. §2902.

      To fulfill its purpose, the FRA requires the head of each agency to "make and preserve

records containing adequate and proper documentation of the organization, functions, policies,

decisions, procedures, and essential transactions of the agency."  <u>Id</u>. At §3101.  Under the

statute, each agency must also "establish and maintain an active, continuing program for the

economical and efficient management of the records of the agency," and must "establish

safeguards against

the removal or loss of records" the agency head determines are necessary and required by

regulations of the Archivist.  <u>Id</u>. At §§ 3102, 3105.  No agency records may be "alienated or

destroyed" except pursuant to the disposal provisions of the FRA.  <u>Id</u>. At §3314.

      An agency wishing to dispose of records must first submit to the Archivist either lists of

records the agency head determines "are not needed by it in the transaction of its current

business," 44 U.S.C. §3303a(2), or "schedules proposing the disposal after the lapse of specified

periods of time of records of a specified form or character" that the agency head determines will

not have "sufficient administrative, legal, research, or other value to warrant their further

preservation by the Government."  <u>Id</u>. At §3303a(3).  Upon receipt of such a request, the

Archivist must issue a notice requesting public comment on the agency's proposal and the

Archivists's staff must conduct its own assessment of the value of the records the agency is

proposing to destroy.  <u>Id</u>. At §3303a(a).  The Archivist is free to accept or reject an agency's

proposal.  <u>Id</u>.

The Supreme Court has emphasized that the APA's "generous review provisions must be given a hospitable interpretation." Abbot Laboratories v. Gardner, 387 U.S. 136 (1967). With the enactment of the FRA, Congress did not intend to foreclose review of an agency's recordkeeping policies, and this Court has jurisdiction to examine them through APA review.

The Second Amended Complaint filed by CREW makes clear that CREW is challenging the adequacy of the Secret Service's record keeping guidelines and directives. Specifically, CREW challenges the agency's policy of destroying all WAVES records once the agency has transferred the information to the White House. Because CREW is seeking review under the APA, the Court clearly has jurisdiction. See American Friends Service Committee v. Webster, 720 F.2d 29 (D.C. Cir. 1983) (holding that even though FRA does not provide private right of action, court could, under the APA, review a challenge to agency's record destruction program, under which agency was destroying records plaintiffs alleged were required to be preserved under the FRA); see also Armstrong v. Bush, 924 F.2d 292 (D.C. Cir. 1991).

Defendant contends that because the FRA precludes judicial review, the APA cannot waive the sovereign immunity of the United States. While defendant is correct that the APA alone does not confer jurisdiction, that is, there must be an underlying statute establishing jurisdiction, DHS is incorrect in suggesting that the FRA does not provide the requisite grant of jurisdiction. As we discuss here, the precedent clearly permits this case to proceed.

With misplaced reliance upon the D.C. Circuit's decision in Armstrong v. Bush, 924 F.2d 282, 294 (D.C. Cir. 1991), the DHS argues that the relief that CREW seeks can only be sought by the government through the FRA's detailed and exclusive enforcement system. See Defendant's Memorandum in Support of Defendant's Motion to Dismiss Claim Four of Plaintiff's Second

8

Amended Complaint ("Def. Mem.") at 6-8.  DHS contends that the FRA precludes the relief sought by CREW.

DHS's position cannot be squared with the holding in <u>Armstrong</u>.  In <u>Armstrong</u>, the plaintiffs, individuals and organizations, brought suit to prohibit the government from erasing any material stored on the National Security Council computer during the last two weeks of the Reagan Administration.  In expressly rejecting defendant-appellant's claim in <u>Armstrong</u> that the FRA precluded judicial review, the court stated, "we find that there is APA review of the NSC's recordkeeping guidelines and instructions, but only limited APA review of claims that records are being destroyed in violation of such guidelines."  924 F.2d at 291.

Here CREW, like the <u>Armstrong</u> plaintiffs, seeks to address the propriety of agency recordkeeping policy – the policy of the Secret Service –  to destroy WAVES records once the Secret Service has transferred copies to the White House.  That the policy at issue is one of document destruction does not remove this claim from the realm of review, in that the erasure of records is encompassed in the agency's recordkeeping guidelines and instructions.[4]  As the <u>Armstrong</u> court noted, "Courts review the adequacy and conformity of agency regulations and guidelines with statutory directives every day."  <u>Id</u> at 294.

The threshold question for the Court to address is whether the jurisdictional prerequisites to suit are met, that is, whether the action as set forth in the complaint is one that Congress contemplated in its waiver of sovereign immunity under the FRA.  DHS's arguments conflate the

---

[4]It is not necessary for the Court to resolve, in analyzing this issue, what specific relief it may grant assuming that it finds in CREW's favor. The question presented is whether sovereign immunity is waived to permit this suit to proceed, and based upon the holding of <u>Armstrong</u>, it is clear that the case may proceed.

invocation of jurisdiction with the nature of the relief sought. The jurisdictional inquiry properly

goes to the kind of claim asserted, and CREW's claim is of the nature permitted by precedent.

II. The Legal Standards Underlying Article III Standing Are Met
By CREW.

In an effort to defeat CREW's standing, DHS divides the documents CREW is seeking

into three distinct categories and argues that because CREW may not get some of the categories

of documents it lacks standing to bring the entire FRA claim. This approach is contrary to the

law of standing and ignores the overriding fact that but for DHS's unlawful document destruction

policy, CREW would have access to <u>all</u> of the records it is seeking.

To invoke the Court's jurisdiction under Article III of the Constitution, a plaintiff must

demonstrate, as an "irreducible constitutional minimum," <u>Lujan v. Defenders of Wildlife</u>, 504

U.S. 555, 560 (1992), an injury-in-fact that is "fairly traceable" to the challenged act and "likely

to be redressed by the requested relief." <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984). CREW

completely satisfies this requirement. CREW's injury, an inability to obtain through the FOIA

information necessary to accomplish CREW's mission, is directly traceable to the challenged act

of improper document retention procedures. The nexus is clear, and DHS so recognizes.

DHS contends that there is no case or controversy for which prospective relief can be

granted because CREW cannot demonstrate more than a past injury. DHS's own description of

the facts in its pleadings and declarations makes clear, however, that CREW is subject to a

continuing injury. CREW has used and will continue to use the FOIA to gain access to agency

records that relate to the propriety of government activity. By adopting a policy of document

destruction, DHS has denied CREW access to requested records. And for any future request,

10

CREW is at the complete mercy of the Secret Service's document transfer and destruction policy.

This information sought by CREW has an undeniable effect upon CREW's ability to inform and to educate the public, which it does on a continuing, ongoing basis. As frequent FOIA uses, CREW is within the zone of interests of the FRA disposal provisions, as were the Armstrong plaintiffs.

Quite simply, because of DHS's recordkeeping policies, CREW has been frustrated in achieving its mission when it sought and was denied the information requested. Because of defendant's refusal to comply with the requirements of the Federal Records Act, CREW has been unable to disseminate and publish information in furtherance of its programmatic activities.[5] Compare Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C. Cir. 1990) ("if an organization points to a concrete and demonstrable injury to its activities . . .the organization passes through the first [standing] gateway"). Through this impairment, CREW has met its burden of establishing an injury-in-fact for Article III purposes.

CREW's organizational interests and allegations of the adverse impact upon its activities resulting from DHS's actions are not unlike other nonprofit organizations which have been found to have established the necessary adverse effect for Article III standing. For example, in Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931 (D.C. Cir. 1986), vacated on other grounds, 494 U.S. 1001 (1990), the plaintiffs were four organizations that through information, counseling,

---

[5]As noted in its complaint, CREW uses a combination of research, litigation, advocacy and public education to expose unethical and illegal conduct by those involved in government. Second Amended Complaint ¶¶4-5. CREW has been "harmed by DHS's failure to comply with the FRA because that failure has denied CREW access to WAVES records that are a critical part of the evidentiary record concerning activities of convicted felon Jack Abramoff, information that is in the public interest." Second Amended Complaint ¶7.

referral, and other services endeavored to improve the lives of elderly citizens. Their complaint challenged both the content of Department of Health and Human Services-specific regulations and the Secretary of the Department of Health and Human Services' failure to act on regulations proposed by other agencies. Id. At 935. The challenged regulations denied the plaintiff organizations access to information and avenues of redress they wished to use in their routine information-dispensing, counseling, and referral activities. Finding that the plaintiff organizations adequately alleged inhibition of their daily operations by reason of the agency's decisions, the D.C. Circuit stated that "injury in fact will not suffice if it is too speculative, but it need not be large or intense; an identifiable trifle. . .is sufficient to meet the constitutional minimum." Id. At 937 citing United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 689 n.14 (1973). See also Fair Employment Council v. BMC Marketing Corp., 28 F.3d 1268, 1276 (D.C. Cir. 1994) (plaintiff organization whose complaint alleged discriminatory actions which interfered with its "broad goal of promoting equal opportunity" and conducting "community outreach and public education, counseling, and research projects" had standing under Article III); Scientists' Institute for Public Information, Inc. v. AEC, 481 F.2d 1079, 1086 (D.C. Cir. 1973) (plaintiff organization had standing to challenge agency decision not to issue an environmental impact statement because the agency action limited the plaintiff's ability to carry out one of its major activities: informing the public). Here CREW has established more than an "identifiable trifle."

Finally, DHS seems to suggest that because the agency now has changed its policy,[6] there

---

[6]Any change, by the agency's own admission, is temporary in nature. According to the declaration of Ms. Lyerly, in "October 2004, at the request of the National Archives and Records Administration, the Secret Service began **temporarily** retaining its own copy of the WAVES

is no expectation that the harm alleged will be repeated.  In other words, rather than have a clearly set out judicially-mandated assessment, CREW should be satisfied that the agency will continue to apply its more recent recordkeeping policy.  Agency fiat, subject to change at the whim of the agency official in charge, is hardly sufficient to ensure full compliance with the law.  DHS could decide tomorrow that the documents it has retained since October 2004 should be transferred to the White House, where, as DHS has noted, they would become Presidential Records and thus not subject to FOIA.  Unquestionably, there exists an imminent threat of future harm.

As with its jurisdictional arguments regarding the FRA, DHS's arguments regarding standing conflate jurisdictional requirements with what remedies it believes the Court may adopt should it find in CREW's favor.[7]  CREW's second amended complaint properly invokes the Court's authority to hear this matter, and DHS has raised no argument upon with it should prevail in its motion to dismiss.

---

records that it transferred to the White House."  Second Amended Complaint, Exhibit D, modified Lyerly declaration at ¶11.  (Empahsis added).  DHS does not define "temporarily," and neither did Ms. Lyerly.

[7]DHS argues, with flagrant boldness, that CREW lacks standing "because these records would still be available to CREW were it to prevail on its FOIA request."  Def. Mem. At 12. This is particularly remarkable in light of the fact that DHS contends that the records CREW requests through FOIA are not agency records.

**CONCLUSION**

For the foregoing reasons, CREW respectfully requests that the Court deny defendants'

motion to dismiss Claim Four of CREW's second amended complaint.

Respectfully submitted,

_____
Anne L. Weismann
(D.C. Bar No. 298190
Sharon Y. Eubanks
(D.C. Bar No. 420147
Citizens for Responsibility and Ethics
     In Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
Phone: (202) 408-5565
Attorneys for Plaintiff

Dated: September 13, 2006

14